IN THE U.S. DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JANE DOE, § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | No. _____ |
| § | |
| MATTHEW JOHN VOLLMER, § | JURY DEMANDED |
| § | |
| *Defendant.* § | |

**COMPLAINT**

## I. INTRODUCTION

1. Plaintiff Jane Doe and Defendant Matthew John Vollmer dated from roughly December 2023 to January 2024 and engaged in sexual relations at Vollmer's home.

2. During their brief relationship—but without Ms. Doe's knowledge or consent—the Defendant secretly filmed sexually explicit videos of Ms. Doe using a hidden video camera embedded in the Defendant's bedside alarm clock.

3. The Defendant then saved the secretly recorded, sexually explicit videos of Ms. Doe to his desktop computer and at least negligently gave a non-party access to them.

4. Afterward, Ms. Doe was informed of the secret videos' existence.

5. Ms. Doe suffered bodily serious injuries as a result of the Defendant's conduct for which the Defendant is liable.

## II. PARTIES

6. Plaintiff Jane Doe (a pseudonym) is a citizen and resident of Montgomery County, Tennessee. She may be contacted through counsel.

7. Defendant Matthew John Vollmer is a citizen and resident of Davidson County, Tennessee. He may be served with process at his personal residence located at 211 Stockyard Street, Apt. 146, Nashville, TN 37201, or wherever he may be found.

## III. JURISDICTION AND VENUE

8. This Court has jurisdiction over this lawsuit under 28 U.S.C. § 1331.

9. As the district where Ms. Doe's causes of action arose and where the Parties reside, venue in this matter is proper under 28 U.S.C. §§ 1391(b)(1) and (2).

10. Under 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the Plaintiff's state law claims that are related to the Plaintiff's federal claims in this action.

## IV. FACTUAL ALLEGATIONS

11. Ms. Doe and the Defendant were in a romantic relationship from roughly December 2023 to January 2024.

12. During their romantic relationship, Ms. Doe and the Defendant engaged in sexual activity at the Defendant's residence.

13. Unbeknownst to Ms. Doe, the Defendant had a video camera hidden in his bedside alarm clock.

14. During her relationship with the Defendant, Ms. Doe was unaware of

the presence of the Defendant's secret alarm-clock video camera.

15. Ms. Doe never consented to the Defendant recording sexually explicit videos of her.

16. On or about January 9, 2024, the Defendant, using his hidden alarm-clock video camera, secretly recorded four sexually explicit videos of Ms. Doe and himself.

17. Ms. Doe had no knowledge of—and she did not consent to, either expressly or impliedly—the video recordings being made, or used, or made available to anyone.

18. Afterward, the Defendant at least negligently enabled a non-party to access the sexually explicit videos of Ms. Doe.

19. The sexually explicit recordings of Ms. Doe did not involve commercial pornographic content.

20. Nor did the sexually explicit recordings of Ms. Doe depict a matter of public concern or public interest.

21. The Defendant did not disclose the sexually explicit recordings of Ms. Doe in good faith to a law enforcement officer or agency; as part of a legal proceeding; as part of medical education, diagnosis, or treatment; or in the reporting or investigation.

22. Nor did the Defendant disclose the sexually explicit recordings of Ms. Doe with the intention to assist Ms. Doe.

23. Other non-parties then obtained and viewed the videos of Ms. Doe.

24. As a result, on or about October 28, 2024, Ms. Doe became aware of the Defendant's sexually explicit video recordings of her and the fact that others had viewed them.

25. The Defendant's disclosure of sexually explicit videos of Ms. Doe caused physical harm to Ms. Doe's body, including sickness or disease.

26. Ms. Doe's injuries do not include, relate to, or result from a symptom, effect, condition, disease, or illness related to: a) any venereal disease; b) herpes; c) Acquired Immune Deficiency Syndrome (AIDS); d) AIDS Related Complex (ARC); or e) Human Immunodeficiency Virus (HIV).

27. Due to the Defendant's conduct, Ms. Doe's privacy, dignity, and bodily autonomy have been violated.

28. Due to the Defendant's conduct, Ms. Doe was traumatized and humiliated.

29. Due to the Defendant's conduct, Ms. Doe has experienced, among other injuries, severe emotional distress and an array of mental, emotional, and physical injuries which have affected and continue to affect her day-to-day life in a profound way, including, without limitation, hypervigilance, racing thoughts, intrusive memories, and moments of disconnection; struggles to focus or stay fully present as a parent, at work, or in daily tasks; and zoning out, replaying what happened, or second-guessing her own decisions.

30. Due to the Defendant's conduct, Ms. Doe feels broken down; she carries deep sadness, anger, confusion, fear, and shame; her sense of stability, safety, self-

worth, confidence, and peace of mind have been shaken; and her trust in others has been damaged, which has affected and continues to affect her relationships and daily life.

32. Due to the Defendant's conduct, Ms. Doe has suffered, among other physical injuries, overwhelming anxiety, muscle tension, headaches, insomnia, and exhaustion.

32. These injuries are not exhaustive.

33. Given the bodily injuries Ms. Doe suffered while she was on the Defendant's premises with the Defendant's permission, Ms. Doe has incurred or will incur medical expenses.

34. Given Doe's bodily injuries caused by the activities of the Defendant, Ms. Doe has incurred or will incur medical expenses.

## V. CAUSES OF ACTION

### CLAIM #1: INVASION OF PRIVACY (INTRUSION UPON SECLUSION)

35. Ms. Doe incorporates and realleges the foregoing allegations as if fully set forth herein.

36. Tennessee tort law recognizes four types of invasion of privacy, including intrusion upon seclusion.

37. Ms. Doe had a reasonable expectation of privacy when engaging in sexual conduct with the Defendant in the Defendant's private residence.

38. The Defendant should have known that Ms. Doe had a reasonable expectation of privacy when engaging in sexual conduct with the Defendant in the

Defendant's private residence.

39. By secretly recording sexually explicit videos of himself and Ms. Doe without Ms. Doe's knowledge or consent and then, at least negligently, enabling others to access the videos, the Defendant intruded upon Ms. Doe's solicitude, seclusion, private affairs, and concerns.

40. The Defendant's intrusion upon Ms. Doe's seclusion would be highly offensive to a reasonable person.

41. The Defendant's invasions of Ms. Doe's privacy caused—and they continue to cause—Ms. Doe bodily injuries, including sickness or disease.

42. For purposes of this cause of action only, the bodily injuries that Ms. Doe suffered were not reasonably expected to result from any intentional or criminal act or omission of the Defendant.

### CLAIM #2: NEGLIGENCE/NEGLIGENCE PER SE

43. The Defendant owed a legal duty to Ms. Doe not to record sexually explicit videos of her without her consent. *See, e.g.,* Tenn. Code Ann. § 39-13-605.

44. The Defendant breached that duty by negligently failing to obtain Ms. Doe's consent before video-recording sexually explicit videos of her.[1]

45. The Defendant's breaches of his legal duty both: (1) in fact and (2) proximately caused Ms. Doe to suffer physical harm to her body, including sickness

---

[1] *Cf. State ex rel. W. Virginia Mut. Ins. Co. v. Bailey*, No. 20-0257, 2020 WL 6581850, at *2 (W. Va. Nov. 10, 2020) ("The order found that, accordingly, Dr. Matulis may be found merely negligent for 'fail[ing] to obtain proper consent' rather than having committed intentional sexual torts."); *NCMIC Ins. Co. v. Smith*, 389 F. Supp. 3d 535, 545 (S.D. Ohio 2019) ("Construing the evidence in the light most favorable to the nonmovants, these alleged facts support a cause of action that Defendant Smith negligently failed to obtain informed consent concerning 'inadverten[t] or accidenta[l] touch[ing]' during treatment.").

or disease.

46. For purposes of this cause of action only, the bodily injuries that Ms. Doe suffered were not reasonably expected to result from any intentional or criminal act or omission of the Defendant.

### CLAIM #3: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

47. The Defendant's negligence in failing to obtain Ms. Doe's effective or proper consent before video-recording sexually explicit videos of her and enabling a non-party to access to them resulted in Ms. Doe suffering serious and severe emotional injury for which she needs treatment, physical harm to her body, and sickness or disease.

48. Ms. Doe's serious and severe emotional injuries are supported by expert medical and scientific proof.

49. A reasonable, normally constituted person would be unable to adequately cope with the severe emotional distress engendered by the circumstances resulting in Ms. Doe's injuries.

50. Ms. Doe's severe emotional distress was caused by Defendant's violation of her personal dignity and bodily autonomy and the resulting illnesses or diseases she has suffered.

51. Ms. Doe may recover against the Defendant based on a standalone claim of negligent infliction of emotional distress ("NIED") under the circumstances of the sexual misconduct presented here.[2]

---

[2] *See, e.g., Doe ex rel. Allen v. Greene Cty. Bd. of Educ.*, No. 3:14-CV-548-PLR-CCS, 2016 WL 8793275, at *12 (E.D. Tenn. Aug. 24, 2016) ("Doe states a plausible NIED claim based on the sexual assault. . .

52. For purposes of this cause of action only, the bodily injuries that Ms. Doe suffered were not reasonably expected to result from any intentional or criminal act or omission of the Defendant.

### CLAIMS ##4–7: VIOLATIONS OF 15 U.S.C. § 6851

53. Ms. Doe incorporates and realleges the foregoing allegations as if fully set forth herein.

54. 15 U.S.C. § 6851(b)(1)(A) provides that:

> [A]n individual whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without the consent of the individual, where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure, may bring a civil action against that person. . . .

55. As used in the above statute, "[t]he term 'disclose' means to transfer,

---

. Accordingly, only insofar as Doe grounds his NIED claim in the assault, Myers's motion for summary judgment is DENIED."); *see also, e.g.*, *Allstate Prop. & Cas. Ins. Co. v. Jong Hwan Choi*, No. 2:14-CV-00311-SAB, 2015 WL 917649, at *4 (E.D. Wash. Mar. 3, 2015) ("Allstate argues that the negligence claim cannot be used to support a duty to defend because there is no such claim for negligent failure to obtain consent for sexual advances under Washington law. Allstate cites no controlling law stating that the tort of negligence cannot arise from failure to obtain consent for sexual advances. . . . Furthermore, even if there is no such negligence claim, Choi is entitled to a defense provided by Allstate on the negligent infliction of emotional distress claim standing alone."); *Homesite Ins. Co. of the Midwest v. Walker*, No. C18-5879 BHS, 2019 WL 4034690, at *6 (W.D. Wash. Aug. 27, 2019), *order clarified*, No. C18-5879 BHS, 2019 WL 5802048 (W.D. Wash. Nov. 7, 2019) ("Therefore, construing the sexual assault and physical or mental abuse exclusion against Homesite, the Court concludes that Homesite has failed to establish that this exclusion bars the Dunn's NIED claim and denies Homesite's motion on this issue."); *N. Carolina Farm Bureau Mut. Ins. Co., Inc. v. Cox*, 823 S.E.2d 613, 624–29 (N.C. 2019) ("Littlefield's sole claim against Cox was negligent infliction of emotional distress ('NIED'), based upon Cox's alleged failure to take reasonable actions to protect Littlefield from, and support Littlefield after, the events leading up to her sexual assault by Pickard, the sexual assault itself, and the events following the assault. Littlefield alleged that the events resulted in 'severe emotional distress,' which required 'hospitalization' and 'extensive physical and psychological treatment[.]' . . . . Having determined that the allegations in support of Littlefield's NIED claim are sufficient to demonstrate an 'occurrence,' and therefore render the 'expected or intended' exemption inapplicable in this case, we hold Farm Bureau has a duty to defend pursuant to the terms of the general personal liability section of the policy."); *Blazevich v. Star Hotels, Inc.*, No. 3:19-CV-198, 2021 WL 1214688, at *9 (W.D. Pa. Mar. 31, 2021); *Ct. v. Loews Philadelphia Hotel, Inc.*, No. CV 16-4848, 2017 WL 569522, at *7 (E.D. Pa. Feb. 13, 2017).

publish, distribute, **or make accessible**." *See* 15 U.S.C. § 6851(a)(4) (emphasis added).

56. Without Doe's consent, and at least recklessly, in June 2024, the Defendant made at least four secretly recorded, sexually explicit videos of Ms. Doe accessible to a non-party.

57. The videos, which depict Ms. Doe fully nude and engaged in sexually explicit conduct, are intimate visual depictions of Ms. Doe.

58. Ms. Doe did not consent to having sexually explicit videos of her made accessible to anyone.

59. Indeed, Ms. Doe did not consent to having sexually explicit videos of her made at all.

60. The Defendant did not have Ms. Doe's consent to make sexually explicit videos of Ms. Doe accessible to anyone.

61. None of the enumerated exceptions to liability, *see* 15 U.S.C. § 6851(b)(4), applies here.

62. The Defendant is liable to Ms. Doe for each sexually explicit video disclosed in violation of 15 U.S.C. § 6851(b)(1)(A).

63. As redress, Ms. Doe seeks "liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred" under 15 U.S.C. § 6851(b)(3)(A)(i).

64. Ms. Doe also seeks a permanent injunction "ordering the defendant to cease display or disclosure of the visual depiction" by destroying them. *See* 15 U.S.C.

§ 6851(b)(3)(A)(ii).

## VI. PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that:

a. The Defendant be required to appear and answer this Complaint within the time required by law;

b. this Court award the Plaintiff liquidated damages in the amount of $600,000.00, plus reasonable attorney's fees and litigation costs, under 15 U.S.C. § 6851(b)(3)(A)(i);

c. this Court award the Plaintiff all compensatory, consequential, and incidental damages to which she is entitled in an amount not less than $1 million;

d. this Court award the Plaintiff punitive damages in an amount not less than $2 million;

e. pre-judgment and post-judgment interest be awarded to the Plaintiff;

f. the Plaintiff be awarded the discretionary costs of trying this action;

g. all costs be taxed against the Defendant;

h. this Court issue a permanent injunction ordering the Defendant to cease display or disclosure of the visual depictions at issue in his possession under 15 U.S.C. § 6851(b)(3)(A)(ii);

i. a jury of 12 be empaneled to try this cause;

j. the Plaintiff's recovery against the Defendant be distributed evenly to the Defendant's victims; and

k. this Court award the Plaintiff all further relief that is just and proper.

Respectfully submitted,

/s/Sarah L. Martin
DANIEL A. HORWITZ, BPR #032176
SARAH L. MARTIN, BPR #037707
HORWITZ LAW, PLLC
4016 WESTLAWN DR.
NASHVILLE, TN 37209
(615) 739-2888
daniel@horwitz.law
sarah@horwitz.law

*Counsel for Plaintiff*